because of the nature of undue influence claims, and because Tinsley has presented sufficient evidence to raise a genuine issue of material fact as to whether Edward Williams was unduly influenced by Beulah Calloway when he changed the beneficiary of his life insurance plan, if he in fact did so, we believe that summary judgment was inappropriate in this case. The evidence demonstrates a number of the factors relevant to the undue influence determination:  it is undisputed that Williams was in poor physical health at the time he purportedly changed beneficiaries and the change was made shortly before his death in order to benefit a neighbor rather than a blood relative.  Although Calloway knew Williams for many years, her affidavit admits that her personal relationship with him began only three years before his death.  Moreover, the affidavit of Mary M. Simms, Williams's niece, viewed in the light most favorable to Tinsley, indicates that Calloway exerted some control over Williams's finances and that she neglected him, from which a reasonable factfinder could infer that Calloway was exercising coercion over Williams in his dependent state.  Although there is some question as to the admissibility of portions of the affidavits that Tinsley has submitted, the admissibility question has not been raised by Calloway.  In any event, we believe that the affidavits contain sufficient competent evidence to raise the question of fact as to whether Calloway exerted undue influence over Williams.

## D.  Forgery

Tinsley also suggests that Williams's signature on the beneficiary designation form may have been forged.  The district court did not address this contention below.  We therefore remand for the district court to consider Tinsley's forgery claim.

## III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment and **REMAND** for further proceedings consistent with this opinion.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0342P (6th Cir.)
File Name:  00a0342p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WILLIE LEE TINSLEY,
    *Plaintiff-Appellant,*

    *v.*          No. 99-2045

GENERAL MOTORS
CORPORATION;
METROPOLITAN LIFE,
    *Defendants,*

BEULAH CALLOWAY,
    *Third-Party*
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-73814—Patrick J. Duggan, District Judge.

Submitted:  September 15, 2000

Decided and Filed:  September 26, 2000

Before:  NELSON and MOORE, Circuit Judges;
WILHOIT,[*] Chief District Judge.

_____

[*] The Honorable Henry R. Wilhoit, Jr., Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

---

### COUNSEL

---

**ON BRIEF:** Steve J. Weiss, Eric A. Michaels, HERTZ, SCHRAM & SARETZKY, Bloomfield Hills, Michigan, for Appellee. Willie Lee Tinsley, Clanton, Alabama, pro se.

---

### OPINION

---

KAREN NELSON MOORE, Circuit Judge. This is an interpleader action in which Willie Lee Tinsley appeals the decision of the U.S. District Court for the Eastern District of Michigan granting summary judgment to third-party defendant-appellee Beulah Calloway and awarding the benefits of Edward B. Williams's ERISA-covered life insurance plan to Calloway. For the reasons set out below, we **REVERSE** and **REMAND** for a trial on the merits.

### I. BACKGROUND

Edward B. Williams, who died on December 18, 1996, had initially designated his niece, Willie Lee Tinsley, as the beneficiary of the life insurance plan that he maintained under the General Motors Life Insurance and Disability Program. Several days before his death, however, Williams executed a new "Designation of Beneficiary" form, naming his neighbor, Beulah Calloway, instead. Calloway had apparently cared for Williams while he was ill and resided with him for a period of time.

Both Calloway and Tinsley attempted to claim benefits from the General Motors plan. Subsequently, Tinsley filed suit against General Motors and its insurer, Metropolitan Life, in the U.S. District Court for the Middle District of Alabama, the state in which Tinsley lives, claiming that she was lawfully entitled to the insurance proceeds and that Williams was acting under undue influence from Calloway when he

overpower and subjugate the mind of the testator as to destroy the testator's free agency and make the testator express another's will rather than his or her own."(citation omitted)); *Cannon v. Allen (*In re *Estate of Depriest)*, 733 S.W.2d 74, 78 (Tenn. Ct. App. 1987). A showing of mere motive or opportunity to exert excessive control over another is not enough to make out a claim of undue influence; rather, the influence must actually be exerted, either prior to or at the time of the execution of the relevant document. *See Bye*, 975 S.W.2d at 457-58; *Kigar v. Michigan Conference Ass'n of Seventh-Day Adventists (*In re *Estate of Erickson)*, 508 N.W.2d 181, 183 (Mich. Ct. App. 1993); *Henkle*, 600 N.E.2d at 794; *Harper v. Watkins*, 670 S.W.2d 611, 622 (Tenn. Ct. App. 1983). Courts have looked at a number of factors to determine whether undue influence has been exerted in a given case, including the physical and mental condition of the benefactor; whether the benefactor was given any disinterested advice with respect to the disputed transaction; the "unnaturalness" of the gift; the beneficiary's role in procuring the benefit and the beneficiary's possession of the document conferring the benefit; coercive or threatening acts on the part of the beneficiary, including efforts to restrict contact between the benefactor and his relatives; control of the benefactor's financial affairs by the beneficiary; and the nature and length of the relationship between the beneficiary and the benefactor. *See Bye*, 975 S.W.2d at 457; *McPeak*, 593 N.W.2d at 187; In re *Estate of Swantek*, 432 N.W.2d 307, 309 (Mich. Ct. App. 1988); *Swihart v. Dozier*, 713 N.E.2d 482, 487 (Ohio Ct. App. 1998); *Depriest*, 733 S.W.2d at 78; *see generally* 25 AM. JUR. 2D *Duress and Undue Influence* § 31 (1996).

As our summary of the law suggests, the inquiry into the exercise of undue influence is a highly fact-intensive one. *See* 25 AM. JUR. 2D *Duress and Undue Influence* § 31 (1996). Moreover, as a result of the subtle and often covert ways in which undue influence may be exercised, it must often be proven by means of circumstantial evidence. *See, e.g.*, *Rich v. Quinn*, 468 N.E.2d 365, 369 (Ohio Ct. App. 1983); 25 AM. JUR. 2D *Duress and Undue Influence* § 41 (1996). Thus,

## C. Undue Influence

Since Tinsley's claim for the benefits of Williams's life insurance plan is preempted by ERISA, this court must "look to either the statutory language or, finding no answer there, to federal common law which, if not clear, may draw guidance from analogous state law." *McMillan*, 913 F.2d at 311. Since ERISA does not contain any provisions regulating the problem of beneficiary designations that are forged, the result of undue influence, or otherwise improperly procured, it appears that federal common law must apply to Tinsley's claims.[1] Furthermore, because there is no established federal common law in this circuit dealing with forgery and undue influence in the designation of beneficiaries, we look to state-law principles for guidance.

Having reviewed the case law regarding undue influence in the various states that comprise this circuit, we can extract some shared general principles to guide our federal-common-law analysis of Tinsley's undue influence claim. First, undue influence is generally defined as influence that is "sufficient to overpower volition, destroy free agency, and impel the grantor to act against the grantor's inclination and free will." *McPeak v. McPeak*, 593 N.W.2d 180, 187 (Mich. Ct. App.), *appeal denied*, 605 N.W.2d 318 (Mich. 1999); *see also Bye v. Mattingly*, 975 S.W.2d 451, 457 (Ky. 1998); *Henkle v. Henkle*, 600 N.E.2d 791, 794 (Ohio Ct. App. 1991) ("[A]n individual's influence is undue when it restrains a testator from disposing of property in accordance with the testator's own wishes and judgments and substitutes the wishes or judgments of another. The undue influence must so

---

[1] Several cases in this circuit have read ERISA's mandate that fiduciaries administer plans "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), to mean that courts need not look beyond the beneficiary designation form to determine the appropriate beneficiary. *See, e.g., Pressley*, 82 F.3d at 130 & n.2; *McMillan*, 913 F.2d at 311-12. We do not believe that this rule is applicable here, however, where the validity of a plan document itself is in question.

changed the beneficiary of his plan. After the case was transferred to the U.S. District Court for the Eastern District of Michigan, GM and Metropolitan Life filed a third-party complaint for interpleader, which brought third-party defendant Beulah Calloway into the action. On May 10, 1999, the district court granted summary judgment in favor of GM and Metropolitan Life based on their deposit of $14,077.80 with the Clerk of Court, representing the entire amount of benefits due under the life insurance program, plus interest.

Calloway then moved for summary judgment, claiming that there was no genuine issue of material fact concerning the appropriate beneficiary under the GM Plan and that no competent evidence supported Tinsley's claim of undue influence. Applying state law, the district court granted Calloway's motion and dismissed Tinsley's complaint. The district court found that Tinsley had the burden of proving that Williams's decision to change the beneficiary of his life insurance plan was affected by undue influence exerted by Calloway, and that Tinsley had failed to carry that burden. On appeal, Tinsley, acting pro se, argues that the district court erred in its determination of her undue influence claim. Moreover, she suggests, as she did in the district court, that Williams's signature on the second beneficiary designation form may have been forged.

## II. ANALYSIS

### A. Summary Judgment Standard

This court reviews de novo the district court's grant of summary judgment. *See Equitable Life Assurance Soc'y v. Poe*, 143 F.3d 1013, 1015 (6th Cir. 1998). Thus, using the same standard as the district court, we will view the evidence in the light most favorable to the nonmoving party and uphold the grant of summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c); *see Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). There is no genuine issue for trial unless the nonmoving party has produced enough evidence for a jury to be able to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Moreover, although the evidence produced by the nonmoving party need not necessarily be "in a form that would be admissible at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), it is well established that hearsay evidence cannot be considered by a trial court ruling on a motion for summary judgment, *see Wiley*, 20 F.3d at 226. Federal Rule of Civil Procedure 56(e) further requires that affidavits submitted in connection with a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e).

## B. ERISA Preemption

Although the district court, like the parties, looked to Michigan state law in its discussion of Tinsley's claims, we believe that federal law governs this case, because it involves an employee welfare benefit plan that is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. ERISA preempts any state law that relates to — that is, that "has a connection with or reference to" — an ERISA-covered plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983); *see* 29 U.S.C. § 1144(a). The Sixth Circuit, following the direction of the Supreme Court, has emphasized the broad scope of ERISA preemption, noting that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991). "[A] state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126, 129 (6th Cir. 1996) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133,

139 (1990)) (alteration in original), *cert. denied*, 520 U.S. 1263 (1997).

In this case, Tinsley's claim is for payment of ERISA benefits, and it concerns the legitimacy of the beneficiary designation contained in the plan documents. The Supreme Court has explained that a suit by a beneficiary to recover benefits from an ERISA-covered plan "falls directly under § 502(a)(1)(B) of ERISA, [29 U.S.C. § 1132(a)(1)(B),] which provides an exclusive federal cause of action for resolution of such disputes." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63 (1987). Moreover, this court has held that claims touching on the designation of a beneficiary of an ERISA-governed plan fall under ERISA's broad preemptive reach and are consequently governed by federal law. *See, e.g.*, *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 420 (6th Cir. 1997); *Pressley*, 82 F.3d at 129; *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir. 1990) ("The designation of beneficiaries plainly relates to these ERISA plans, and we see no reason to apply state law on this issue."). We therefore conclude that the question whether Tinsley is entitled to the proceeds from Williams's life insurance plan due to the alleged forgery of Williams's signature on the beneficiary designation change form or the alleged exercise of undue influence by Calloway is preempted by ERISA and governed by federal law. *Cf. Metropolitan Life Ins. Co. v. Hall*, 9 F. Supp. 2d 560, 563-64 (D. Md. 1998) (concluding that the question whether an ERISA plan participant was competent to change beneficiaries is preempted by ERISA and governed by federal law). *But cf. Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 959-61 (9th Cir. 1998) (holding that ERISA does not preempt the California law of constructive trusts and analogizing to state "slayer statutes" preventing payment of life insurance benefits to the insured's slayer, suggesting that such statutes would clearly not be preempted by ERISA), *cert. denied*, 525 U.S. 1122 (1999).