**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0800n.06
Filed: September 22, 2005

**Case No. 04-3192**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNICARE LIFE & HEALTH INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| FLOYD CRAIG, JR., | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |
| DANIELLE M. HARDY; KIMBERLY M. | ) | |
| STEPHENS; and PATRICIA D. HALL, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| _____ | ) | |

**BEFORE:  SUHRHEINRICH, BATCHELDER and GIBSON[*], Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.**  On June 15, 2001, Unicare Life & Health Insurance Company ("Unicare") filed a complaint for interpleader against Appellant Floyd Craig, Jr., and Appellees Patricia D. Hall, Danielle M. Hardy, and Kimberly M. Stephens, to determine the proper beneficiary of a policy of life insurance on its insured, Patricia E. Hardy-Craig.  The decedent's widower, Floyd Craig, argued that as the named beneficiary at the time of the insured's death he was entitled to the entire proceeds of the life insurance policy.  Contrarily, the decedent's three daughters claimed that their mother had effectuated a change of beneficiary prior to her death

---

[*]The Honorable John R. Gibson, United States Court of Appeals Judge for the Eighth Circuit, sitting by designation.

and that they were entitled to equal shares of the policy proceeds. Following a bench trial, the magistrate judge issued a written order dated December 29, 2003, finding that the decedent had expressed a clear intent to change the beneficiaries of her insurance policy to her daughters before her death, and ruling that the daughters are entitled to the proceeds of the policy. Because it is well-established in this circuit that we must determine the insured's intent by looking to the designated beneficiary in the plan documents at the time of the insured's death, we REVERSE the judgment of the magistrate judge.

## I.

As a benefit of her employment, Patricia Hardy-Craig was covered by a contract for Group Term Life Insurance issued by Unicare pursuant to a contractual arrangement with her employer Ernst & Young Product Sales LLC ("Ernst & Young"). The policy, which became effective on January 1, 1999, named Patricia's three daughters as beneficiaries and provided $50,000 in death benefits. In May 1999, Patricia married Floyd Craig. She executed a Beneficiary Designation/Change Form on June 1, 1999, substituting Craig as the primary 100% beneficiary of the insurance policy in place of her three daughters. Prior to her marriage, Hardy-Craig had been diagnosed with colon cancer, and she died on November 28, 2000. Following her death, Craig, Hardy, Stephens, and Hall, all contacted Unicare claiming to be entitled to the proceeds of Hardy-Craig's life insurance policy.

According to the plan documents, to change a beneficiary designation, the insured must execute a written form and return it to Ernst & Young. The policy provides in relevant part:

<u>Beneficiary of Employee</u>

2

The employee's beneficiary shall be the person or persons designated by the employee in writing and entered in the insurance records maintained as provided under the Policy Specifications.

Change of Beneficiary

Changes in the employee's designation of beneficiary may be made by the employee by notice in writing given to his Participating Employer, but the new designation shall become effective only when it is entered in the insurance records maintained as provided under Policy Specifications . . . .

Ernst & Young never received a signed copy of the form required to change beneficiaries, and it is undisputed that at the time of Hardy-Craig's death, Craig was listed as the sole named beneficiary under the life insurance policy.

The daughters contend that despite the designation of Craig as the primary beneficiary in the plan documents, Hardy-Craig intended to change her primary beneficiary from Craig to her daughters. Both Stephens and Hardy testified that their mother told them she wanted Craig replaced as the beneficiary on her life insurance policy because she did not want Craig to benefit from her death. Hardy also testified that she listened in on three telephone conversations between her mother and a representative of Benefits Express, the administrator of Ernst & Young's benefits plan, in which Hardy-Craig obtained information on how to change her personal identification number ("PIN") so that she could change her beneficiary from her husband to her daughters. However, Stephens, Hardy, and Hall all testified that they never saw or helped their mother prepare a change of beneficiary form.

In addition to the foregoing testimony, the magistrate judge accepted into evidence transcripts of four recorded telephone conversations between Hardy-Craig and benefits representatives at Benefits Express. In the first conversation, Hardy-Craig indicated that she wished to change the named beneficiary to designate her three daughters, and she stated, "I want Floyd

3

Craig off." Because she did not have sufficient information about her daughters in front of her to complete the process and generate the change of beneficiary form, however, the form was not sent to her at that time. In the second conversation, Hardy-Craig again told the benefits representative that "I want to eliminate Floyd Craig, Jr." as a beneficiary. She gave the representative the required information about her daughters to generate the change of beneficiary form, and the representative informed her that "[y]ou'll receive a confirmation in the mail in about five to 10 business days . . . What you would do is sign that, date that and return that within 90 days . . . And then once that's processed here at Benefits Express, that will update your beneficiaries." Hardy-Craig responded, "Okay." During the third conversation, Hardy-Craig informed the benefits representative that one month had gone by and she had not yet received a confirmation form. The representative indicated that Hardy-Craig should have received the form already, but told her that a new form could not be generated at that time because Hardy-Craig was unable to recite her PIN properly. The representative then sent Hardy-Craig a new temporary PIN in the mail and told her to call back immediately upon getting the PIN to finish the process of changing beneficiaries. Finally, during the fourth conversation, Hardy-Craig gave the benefits representative her PIN and confirmed that she wanted Craig "off" as the primary beneficiary on her life insurance policy, and wanted to designate instead her three daughters. A change of beneficiary form was then generated, and the benefits representative stated, "You'll be receiving beneficiary forms in the mail showing the beneficiaries that you elected. You just need to make sure you sign them and date them and send them back into us."

Janette Gears, supervisor of the health and welfare plans of Ernst & Young, explained in further detail that in order to change the primary beneficiary designation under the life insurance

4

provided by her employer, an insured must: (1) contact Benefits Express by phone (absent access to a personal computer); (2) provide a PIN for identification purposes; (3) provide names, addresses, social security numbers, birth dates and percentage distribution relating to the intended beneficiaries; and (4) upon receiving a form confirming the above information, sign and return it. She stated that until the signed confirmation form was received, the change would not be effective. Gears also identified printouts of computer screens generated consequent to the telephone calls between Benefits Express representatives and Hardy-Craig indicating that she had attempted to change the beneficiary designation on her life insurance policy to her daughters. This information would typically be sent to another department so that a confirmation letter could be generated and sent to the insured for signature. Gears testified that these computer screens were evidence that the change of beneficiary form was both generated and mailed to Hardy-Craig in the regular course of business.

**II.**

Following a bench trial, we review the lower court's factual findings for clear error and its legal conclusions de novo. *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 938 (6th Cir. 1997). The life insurance policy at issue in this case is an "employee welfare benefit plan" that is governed by Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq. See* 29 U.S.C. § 1002(1). The ERISA statute provides that federal law shall supersede all state laws that "relate to" an ERISA plan. 29 U.S.C. § 1144(a). A particular state law relates to an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). We have repeatedly and explicitly held that the designation of beneficiaries has a connection with or reference to an ERISA plan, and ERISA therefore preempts state law governing

5

the designation of beneficiaries. *Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126, 129 (6th Cir. 1996); *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir. 1990).

As the magistrate judge correctly pointed out, once it is established that ERISA applies and state law is preempted, we determine the proper beneficiary by looking to "the statutory language or, finding no answer there, to federal common law which, if not clear, may draw guidance from analogous state law." *McMillan*, 913 F.2d at 311. There is a split amongst the circuits with respect to the manner in which a beneficiary is determined. Several circuits, finding no explicit answer in the text of ERISA, look to the federal common law for the controlling principles. *See*, *e.g.*, *Guardian Life Ins. Co. of America v. Finch*, 395 F.3d 238, 240-41 (5th Cir. 2004); *Hill v. AT&T Corp.*, 125 F.3d 646, 648 (8th Cir. 1997); *Estate of Altobelli v. Int'l Bus. Machs. Corp.*, 77 F.3d 78, 81-82 (4th Cir. 1996); *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 280-81 (7th Cir. 1990) (en banc). "The Sixth Circuit takes a different view and holds that ERISA itself supplies the rule of law." *Pressley*, 82 F.3d at 130; *see also McMillan*, 913 F.2d at 311. The magistrate judge followed the majority approach and examined the beneficiary-designation issue under the "substantial compliance" rule of the federal common law and Ohio common law (the two are indistinguishable). The magistrate judge erred.

Our view that ERISA supplies the rule of law is grounded in the ERISA provision requiring a plan administrator to administer the plan "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). It is undisputed that Craig was the named beneficiary on the plan documents at the time of Hardy-Craig's death, and that Ernst & Young never received the signed change of beneficiary form required by the terms of the plan to complete the change of beneficiary under her life insurance policy. We have consistently held that Section

6

1104(a)(1)(D) of ERISA establishes "a clear mandate that plan administrators follow plan documents to determine the designated beneficiary." *Pressley*, 82 F.3d at 130; *Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 678 (6th Cir. 2000) ("It is clear that the law of this Circuit requires the ERISA plan administrator to pay out plan proceeds in accordance with the ERISA plan documents."); *Mattei v. Mattei*, 126 F.3d 794, 796 n. 2 (6th Cir. 1997) (same); *McMillan*, 913 F.2d at 311-12 (same). Under this court's bright line rule, therefore, we determine the insured's intent by the designation on file at the time of the insured's death. *McMillan*, 913 F.2d at 312.

The rule adopted by this circuit is premised on our view that Congress intended ERISA plans be uniform in their interpretation and simple in their application. *Id.* "Rules requiring payment to the named beneficiary yield simple administration, avoid double liability, and ensure that beneficiaries get what's coming to them without the folderol essential under less-certain rules." *Id.* (quoting *Fox Valley*, 897 F.2d at 283 (Easterbrook, J., dissenting)). It is true that in *Tinsley v. General Motors Corp.*, 227 F.3d 700 (6th Cir. 2000), a case in which the validity of the plan documents themselves were called into question by allegations of forgery and undue influence, we found our general rule to be inapplicable, *id.* at 704 n. 1, and instead we found it appropriate to consult the federal common law. But *Tinsley* is inapposite here; this case does not challenge the validity of the plan documents.

We have little doubt, having reviewed this record, that Hardy-Craig did intend to change her designated beneficiary from her husband to her daughters. But she did not complete the steps required by the terms of her policy in order to effectuate such a change. The plan documents as of the date of her death specify Craig as the beneficiary, and while the equities may weigh in favor of

7

the daughters, our decision is governed, not by equity, but by the law of this circuit. That law requires that "the documents control, and those name [Floyd Craig]." *McMillan*, 913 F.2d at 312. And because "the beneficiary card controls whom the plan administrator must pay," we may not look beyond the plan documents to determine the decedent's intent.[1] *Howell*, 227 F.3d at 677.

## III.

For the foregoing reasons, we **REVERSE** the judgment of the magistrate judge and we **REMAND** for further proceedings consistent with this opinion.

---

[1] Because we find that Craig must prevail under the rule set forth in *McMillan* and its progeny, it is unnecessary for us to address Craig's argument that the transcripts of the telephone conversations between Hardy-Craig and the Benefits Express representatives were improperly admitted into evidence.

JOHN R. GIBSON, Circuit Judge, concurring specially.


I concur in the district court opinion as I am satisfied that circuit precedent requires it.  I write specially because I would remand this case to the district court for further consideration of the equities under Ohio law as to whether a constructive trust should be imposed on those funds now held by the district court.  In Central States, SE & SW Areas Pension v. Howell, 227 F.3d 672 (6th Cir. 2000), under circumstances that are very similar to those described in the magistrate judge's opinion, this court remanded to the district court for further consideration of whether the equities are such that the district court should impose a constructive trust on the ERIS plan proceeds for the benefit of the wife.  I believe we should follow the same procedure.