NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0310n.06
Filed: May 7, 2007

No. 06-3826

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOSEPH E. KMATZ, individually and as Executor of the Estate of JOSEPH M. KMATZ, | ) ) ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| METROPOLITAN LIFE INSURANCE | ) | SOUTHERN DISTRICT OF OHIO |
| COMPANY, ABX AIR INC., AIRBORNE | ) | |
| FREIGHT CORP. and JENNIFER GAINES, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: SUHRHEINRICH, CLAY and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. On behalf of himself and his son's estate, Joseph E. Kmatz urges us to hold that he, not Jennifer Gaines (the one-time wife of his son), is the beneficiary of his son's life-insurance policy. Faced with cross motions for summary judgment and faced with a beneficiary designation form that the decedent did not change after the dissolution of his marriage, the district court determined that Metropolitan Life Insurance Company (MetLife) properly paid the decedent's life insurance benefits to Jennifer Gaines. We affirm.

I.

Joseph *M*. Kmatz, the decedent, worked as an aircraft mechanic for ABX Air in Wilmington, Ohio. He enrolled in the company's employee-benefit program, which included life-insurance and accidental-death-insurance policies issued by MetLife.

The plan administrator is Airborne Freight Corporation, which (along with the plan's claims administrator, the insurance companies "and other Plan fiduciaries") possesses "full and absolute discretionary authority to administer and interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits. Benefits under [the] Plan [are] paid only if the Plan Administrator, or its delegate, decides in its discretion that the applicant is entitled to them." JA 144.

"In the event of [a participant's] death," the summary plan description explains that the participant's "beneficiary will be paid [the participant's] Life Insurance benefit." JA 128. The plan description defines a "beneficiary" as "the person or persons you name to receive your Life Insurance benefit in the event of your death," and instructs plan participants to "complete the beneficiary section of your Group Insurance Enrollment form and return it to the Benefits section of Human Resources to assure that Life Insurance benefits are paid in accordance with your wishes." JA 129. The plan description also informs participants that they may change their "beneficiary designation at any time." *Id.* If a participant fails to name a beneficiary in the first instance or if the named beneficiary predeceases the participant, MetLife will pay the benefits "in the following order of

priority: 1. Your spouse; 2. Your child(ren) equally; 3. Your parent(s) equally; 4. Your brother(s) and sister(s) equally; 5. Your estate." *Id.*

On November 13, 1999, Kmatz married defendant Jennifer Gaines. Soon after the wedding, he executed a two-page "Group Insurance Enrollment/Change Form" designating Gaines as the beneficiary of his life-insurance and accidental-death-insurance policies. He also enrolled Gaines as a dependent in his health-insurance plan. After six months of marriage, the couple separated. Kmatz and Gaines executed a separation and property agreement that purported to be the "full and complete settlement of all spousal support and property rights between the parties." JA 26. The agreement did not mention life-insurance benefits. A Clinton County (Ohio) magistrate granted the couple's petition for a dissolution of their marriage shortly thereafter.

On August 25, 2000, Kmatz executed a new "Group Insurance Enrollment/Change Form," this time canceling his ex-wife's health coverage under the company's health insurance plan. JA 331. He did not, however, name a new life-insurance or accidental-death-insurance beneficiary; he left that portion of the form blank.

Kmatz died intestate on August 24, 2003. After his death, MetLife owed $64,000 in group life insurance benefits and $64,000 in accidental death benefits to his beneficiary. On August 30, Gaines filled out a "Beneficiary's Life Insurance Claim Statement," seeking her ex-husband's benefits under the plan. JA 164. In a cover letter dated October 27 and accompanied by Gaines' claim documents, ABX Air benefits coordinator Julie Ake notified MetLife that it had received

Gaines' claim and that "[t]he latest beneficiary listed [on Kmatz's group enrollment form] was his ex-wife, Jennifer Kmatz (Gaines) [who] was listed as the beneficiary on 12/01/99." JA 163. Ake noted that "Kmatz dropped his ex-wife from his insurance[;] however he did not change his beneficiary." *Id.* MetLife approved the claim on November 7, paying $128,394.52.

On December 3, an attorney representing Kmatz's parents sent a letter to MetLife stating that, under Ohio law, any designation of an ex-spouse as a life-insurance beneficiary is revoked if the couple has divorced or obtained a dissolution. The living spouse, the letter explained, is treated as having predeceased the insured spouse. *See* Ohio Rev. Code § 5815.33. Relying on this law, the attorney maintained that Kmatz's parents—not his ex-wife—had "the sole right to receive payments as the beneficiaries" of Kmatz's insurance policy. JA 151; *see also* JA 129 (plan description indicates that parents become beneficiaries if the insured has neither a spouse nor children).

In a letter dated December 11, MetLife responded to Kmatz's parents, informing them that ERISA, not state law, governed the insurance plan and that MetLife "must administer claims in accordance with the documents and instruments governing the plan." JA 148. "The Plan provides that benefits are payable to the beneficiary named by the participant on a proper form," the letter continued, and "[t]he latest designation of beneficiary contained in Joseph Kmatz's records . . . names Jennifer Kmatz as the sole beneficiary of the benefits." *Id.*

On June 29, 2004, Kmatz's father filed this lawsuit in federal district court on behalf of himself and his son's estate. As pertinent here, the amended complaint stated claims for (1) breach

of contract against MetLife and (2) breach of fiduciary duty against ABX, Airborne and MetLife, *see* 29 U.S.C. §§ 1104, 1105. Faced with cross motions for summary judgment on these two claims, the court granted both Gaines' and the companies' motions and denied the estate's motion.

II.

When a plan empowers administrators with "a *clear* grant of discretion to determine benefits or interpret the plan," *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994), judicial review of the exercise of that discretion is limited—limited to deciding whether the administrator's decision was arbitrary and capricious, *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). Because this plan says that the administrators possess "full and absolute discretionary authority to administer and interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits," JA 144, we must apply this "highly deferential standard of review" here, *Shelby Co. Health Care Corp. v. So. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000). A plan administrator's "decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan." *Id.*; *see also Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693–94 (6th Cir. 1989).

ERISA expressly instructs a plan administrator to "discharge his duties with respect to a plan"—which includes identifying the correct beneficiary of a life-insurance policy—"in accordance with the documents and instruments governing [that] plan." 29 U.S.C. § 1104(a)(1)(D). The parties do not dispute that Kmatz removed Gaines as a beneficiary of his health insurance plan after the

dissolution of their marriage, and they do not dispute that he left blank the portion of that same form that would have permitted him to change the life-insurance beneficiary designation from his former wife to his father. Doubtless, there is plenty of room to speculate about what Kmatz might have wished to do with this beneficiary designation had he expressly reconsidered it after his marriage dissolved. But, under a straight reading of the contract, it is hardly the case that the plan administrator acted arbitrarily and capriciously when it respected the still-extant terms—here the beneficiary designation—of the life-insurance policy. *See id.* § 1104(a)(1)(D).

Nor is this the first time our court has heeded an administrator's decision in this kind of situation rather than our own intuition of what the decedent may well have wanted to do. *See, e.g.*, *Metro. Life Ins. Co. v. Pressley*, 82 F.3d 126, 130 (6th Cir. 1996) (holding that plan documents listing an ex-wife as beneficiary controlled rather than a divorce decree containing a "broad waiver of rights"); *McMillan v. Parrott*, 913 F.2d 310, 311–12 (6th Cir. 1990) (holding that plan documents listing ex-wife as beneficiary controlled despite divorce settlement indicating ex-wife had waived right to benefits); *see also Unicare Life & Health Ins. Co. v. Craig*, 157 F. App'x 787, 792 (6th Cir. Sept. 22, 2005) (holding that husband was proper beneficiary because he was still listed on plan documents, even though there was "little doubt" that decedent intended to change her beneficiary from her second husband to her daughters); *Hendon v. E.I. DuPont De Nemours & Co.*, No. 96-6233, 1998 WL 199824, at \*4, \*6 (6th Cir. Apr. 13, 1998) (holding that ex-husband was proper beneficiary despite a dissolution agreement containing "a fairly explicit waiver of the plan benefits" and stating that "we have interpreted [§ 1104(a)(1)(D)] as establishing a clear mandate that plan administrators

follow plan documents in determining the designated beneficiary"); *Czarski v. Bonk*, No. 96-1444, 1997 WL 535773, at *3 (6th Cir. Aug. 28, 1997) ("This circuit has clearly and repeatedly held that 29 U.S.C. § 1104(a)(1)(D) . . . together with plan provisions that allow (or require) a plan participant to change the designated beneficiary of the plan, require the administrator to give benefits to the beneficiary named in the plan documents.").

In addition to contending that it should have received the life-insurance benefits, the estate complains that Airborne and MetLife failed to satisfy ERISA's notice provision because the plan administrators did not notify Kmatz's father before paying Kmatz's benefits to Gaines. *See* 29 U.S.C. § 1133. ERISA, however, demands no such notification in this instance. Section 1133 requires benefit plans to "provide adequate notice . . . to any participant or beneficiary *whose claim for benefits under the plan has been denied*" and to "afford a reasonable opportunity to any participant *whose claim for benefits has been denied* for a full and fair review." (emphasis added); *see McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005). The estate is neither a plan participant nor a beneficiary whose claim for benefits has been denied; the estate, indeed, never submitted a claim under the plan.

The estate persists that Kmatz's father, not his ex-wife, should receive the plan proceeds because Kmatz "substantially complied" with the plan's instructions for changing his beneficiary designation. Br. at 18. As an initial matter, Kmatz relies heavily on evidence outside the administrative record in making this claim—evidence that the district court properly declined to consider. *Wilkins v. Baptist Healthcare Sys. Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) ("The district

court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision.").  Because the estate attempts to use this extra-record evidence to obtain the benefits themselves, *see* 29 U.S.C. § 1132(a)(1)(B), not to show that the procedure used by the administrator was flawed, it may not rely on this evidence.

Moreover, while other circuits have embraced the substantial-compliance doctrine*,* in some instances as a matter of state law and in some instances as a matter of federal common law, *see, e.g.*, *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 827 (9th Cir. 2000); *Aetna Life Ins. Co. v. Wise*, 184 F.3d 660, 663 (7th Cir. 1999); *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 565 (4th Cir. 1994), our take on the doctrine is less clear.  *See, e.g.*, *Pressley*, 82 F.3d at 130 n.2 (concluding that plan documents controlled and therefore declining to determine whether decedent sought "substantially to redesignate [his] beneficiary"); *Life Ins. Co. of N. Amer. v. Leeson*, 81 F. App'x 521, 523–24 (6th Cir. Nov. 6, 2003) (engaging in substantial compliance discussion but noting that there was not substantial compliance when the decedent filled out change-of-beneficiary form but forgot to send it in); *Aetna Life Ins. Co. v. Weatherford*, No. 90-5585, 1991 WL 11611, at *1, *6 (6th Cir. Feb. 5, 1991) (undertaking substantial compliance analysis but noting that there was no substantial compliance when the decedent "partially completed" a change-in-beneficiary form by checking a box labeled "Change in Beneficiary Designation," but did not designate a beneficiary, obtain a witness's signature or mail in the form).  *But see Tinsley v. Gen. Motors Corp.*, 227 F.3d 700, 704 n.1 (6th Cir. 2000) (rejecting 29 U.S.C. § 1104(a)(1)(D) analysis in favor of federal common law analysis because "the validity of a plan document itself [was] in question").  We need

not determine whether the doctrine has force in this circuit because, even if we engaged in a substantial-compliance analysis, Kmatz's actions fall well short of satisfying it.

The estate's claim does not satisfy even the most far-reaching characterizations of the doctrine. To comply in substance with plan procedures, an insured must "do all that he reasonably could do to meet the conditions of the policy." *Leeson*, 81 F. App'x at 524 (internal quotation marks omitted); *see also, e.g.*, *Wise*, 184 F.3d at 663 ("For a change of beneficiary to be effective, the party asserting that a change has occurred must establish: (1) the certainty of the insured's intent to change his beneficiary and (2) that the insured did everything he could have reasonably done under the circumstances to carry out his intention to change the beneficiary.") (internal citation omitted).

This, however, is not a case where the decedent failed to include a middle initial or placed the right information on the wrong line of a form. The change-of-beneficiary form contains nothing—no initials, no words, no letters, anywhere. On this record, Kmatz thus did not do everything he reasonably could have here—first and foremost because he did not complete the only document that could effect the change in beneficiary. The summary plan description expressly instructs participants to "complete the beneficiary section of your Group Insurance Enrollment form and return it to the Benefits section of Human Resources to assure that Life Insurance benefits are paid in accordance with your wishes." JA 129. No matter how much evidence the estate can produce to show what Kmatz *intended* to do, one glaring fact remains: He did not do it, leaving the administrator with a clearly written designation in favor of Jennifer Gaines.

Also unavailing is the estate's claim that the plan administrators breached their fiduciary duties. *See* 29 U.S.C. § 1104. First, the factual bases offered in support of these claims do not pass muster. We have already rejected one of them—that the defendants violated the plan's notice requirements. The other one turns on the allegation that the ABX benefits coordinator "undertook an affirmative duty to assist . . . Kmatz in changing his life insurance beneficiary—going so far as to actually fill the form out for" him. Br. at 31. The administrative record does not support this claim, and the extra-record materials offered by the estate do not support it either.

Second, the estate leaves us guessing as to which subsection of 29 U.S.C. § 1132 it relies on in bringing these claims—§§ 1132(a)(2) or (a)(3). (The estate has already raised—and lost—a denial-of-benefits claim under § 1132(a)(1)). Under either subsection, the estate loses. Neither § 1132(a)(2) nor § (a)(3) supplies the sort of remedy that the estate seeks—money damages. Any recovery obtained under § 1132(a)(2), moreover, "inures to the benefit of the plan as a whole," not to an individual plan beneficiary. *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). And § 1132(a)(3) allows only for equitable relief. *Helfrich v. PNC Bank, Ky., Inc.*, 267 F.3d 477, 481 (6th Cir. 2001). As the estate lacks a factual and legal basis for its breach-of-fiduciary-duty claims, the district court properly rejected them as a matter of law.

III.

As for the estate's state-law claims, it offers no substantive arguments on appeal except to say that, if we "reverse[ ] the decision of the trial court on Plaintiffs' claims against MetLife or ABX

. . . the basis for [the district court's] decision in granting summary judgment to Gaines would be lacking, and should also be reversed and remanded." Br. at 32–33. Because the district court properly granted the other defendants' motion for judgment on the administrative record, we necessarily reject the estate's challenge to the resolution of these claims as well.

IV.

For these reasons, we affirm.