MCPEAK v MCPEAK (ON REMAND)

Docket No. 176584. Submitted November 3, 1998, at Detroit. Decided January 19, 1999, at 9:20 A.M. Leave to appeal sought.

Kristine S. and Kerry L. McPeak brought an action in the Saginaw Circuit Court against Joann McPeak, seeking the imposition of a constructive trust on the proceeds of an insurance policy on the life of Michael McPeak and seeking an award of exemplary damages against the defendant. The plaintiffs, McPeak's daughters from his first marriage, alleged that the defendant, McPeak's second wife, had exerted undue influence on him to cause him to designate the defendant as the beneficiary of the insurance policy in place of the plaintiffs, whom he had originally named as beneficiaries. The plaintiffs also alleged that because of brain surgeries for cancer, Michael McPeak lacked sufficient mental capacity when he made the change in beneficiaries. The court, Lynda L. Heathscott, J., entered judgment on a jury verdict for the plaintiffs. The Court of Appeals, MARKMAN, P.J., and MCDONALD and M. J. MATUZAK, JJ., in an unpublished opinion per curiam, issued March 18, 1997 (Docket No. 176584), reversed and remanded for ·a new trial, holding that the plaintiffs' action was equitable, for which there was no right to a jury trial. The Supreme Court, holding that issues for which a jury trial is not available by right may nonetheless be tried before a jury with the consent of the parties, vacated the decision of the Court of Appeals and remanded the case to the Court of Appeals for consideration of the issues raised by the parties but not addressed in the original Court of Appeals opinion. 457 Mich 311 (1998).

On remand, the Court of Appeals *held*:

1. The trial court did not err in denying the defendant's motion for summary disposition of the claim for exemplary damages. Exemplary damages are permissible in both legal and equitable actions where the plaintiff pleads voluntary conduct by the defendant that is malicious and wilful, inspires feelings of humiliation, outrage, and indignity, and demonstrates a reckless disregard of the plaintiff's rights.

2. The trial court did not err in denying the defendant's motions for a new trial, remittitur, or judgment notwithstanding the verdict with respect to the award of exemplary damages. There was suffi-

cient evidence to create an issue for the jury with respect to injury to the plaintiffs' feelings, thus making proper the denial of the motion for judgment notwithstanding the verdict, and there was sufficient evidence on the record to support the jury's award of exemplary damages, thus making proper the denial of the motion for a new trial or remittitur.

3. The jury's verdict finding both undue influence and mental incapacity is not inconsistent. The jury logically could have found that the defendant exerted undue influence on Michael McPeak over a long period while he was mentally competent to lead him to change beneficiaries, but that at the specific moment he changed beneficiaries he was mentally incompetent.

4. The trial court did not abuse its discretion in allowing witnesses to testify regarding their opinions about the mental competence of Michael McPeak on the day he signed the change of beneficiary form. The plaintiffs presented sufficient evidence of the qualifications of two witnesses who were doctors. Any limitations on their qualifications pertain to the weight to be given their testimony, not to its admissibility. MRE 702. The testimony of the lay witnesses was based on their perceptions, was helpful to a clear understanding of a fact at issue, and was therefore permissible under MRE 701.

5. The trial court did not abuse its discretion by refusing to allow the defendant to present Michael McPeak's life insurance agent as a witness and by refusing to admit as an exhibit a copy of a letter and change of beneficiary form requested by the agent. Assuming that the trial court erred in disallowing such evidence, the defendant suffered no prejudice because she was allowed to present testimony establishing the points she sought to make with the testimony of the agent and the letter.

6. The trial court did not abuse its discretion in instructing the jury concerning mental capacity. The instructions, as a whole, adequately informed the jury of the applicable law. The defendant failed to cite supporting authority for, and therefore waived appellate review of, the claim that the jury should have been instructed that the plaintiffs had to prove that undue influence was exerted on Michael McPeak at the exact moment he changed beneficiaries.

7. The trial court, with respect to the claim of undue influence, did not abuse its discretion in admitting evidence of the defendant's conduct during periods when Michael McPeak's susceptibility to the defendant's conduct was not at issue. The timeliness of evidence of undue influence bears on the weight of the evidence and not on its admissibility.

8. The attorney fee awarded as a mediation sanction against the defendant was not excessive. The hourly rate does not conflict with the plaintiffs' contingent fee agreement and was reasonable given the complexity of the case.

9. Contrary to the plaintiffs' claim on cross appeal, they are not entitled to prejudgment interest pursuant to MCL 600.6013; MSA 27A.6013 inasmuch as they received equitable relief.

Affirmed.

1. DAMAGES — EXEMPLARY DAMAGES — EQUITABLE ACTIONS.

Exemplary damages are permissible in both legal and equitable actions where the plaintiff pleads voluntary conduct by the defendant that is malicious and wilful, inspires feelings of humiliation, outrage, and indignity, and demonstrates a reckless disregard of the plaintiff's rights.

2. DAMAGES — EXEMPLARY DAMAGES.

Exemplary damages are recoverable as compensation to the plaintiff and not as punishment of the defendant; an award of exemplary damages is proper if it compensates a plaintiff for the humiliation, sense of outrage, and indignity resulting from injustices maliciously, wilfully, and wantonly inflicted by the defendant.

3. JURY — VERDICTS — INCONSISTENT VERDICTS.

A verdict is not inconsistent if there is an interpretation of the evidence that provides a logical explanation for the findings of the jury; only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside.

4. JURY — INSTRUCTIONS — APPEAL.

Jury instructions are reviewed as a whole to determine whether they adequately informed the jury of the applicable law, given the evidentiary claims of the case.

5. WORDS AND PHRASES — UNDUE INFLUENCE.

Undue influence is established on a showing that a person was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency, and compel the person to act against inclination and free will; the timeliness of evidence of undue influence bears on the weight of the evidence and not on its admissibility.

*Douglas W. Taylor*, for the plaintiffs.

*Braun Kendrick Finkbeiner P.L.C.* (by *Scott C. Strattard*), for the defendant.

ON REMAND

Before: MURPHY, P.J., and FITZGERALD and GAGE, JJ.

PER CURIAM. This case is before us on remand from the Supreme Court. Defendant appealed as of right a May 2, 1994, judgment in favor of plaintiffs in this action involving allegations of undue influence and mental distress. In this Court's original unpublished opinion per curiam, issued March 18, 1997 (Docket No. 176584), the panel[1] sua sponte concluded that plaintiffs were not entitled to a jury trial with respect to their equitable claims. Thus, the judgment of the jury was vacated and the matter was remanded for a new trial. The Supreme Court vacated this Court's decision on the ground that it was improper to require a new trial because the case was submitted to the jury with the consent of the parties.[2]    The Supreme Court also remanded the case to this Court for consideration of the other issues raised by the parties but not addressed in the original opinion.

Michael McPeak (hereafter McPeak) and defendant were married in November 1990. In April 1991, McPeak was diagnosed with glioblastoma multiforme, a highly malignant brain tumor. Surgery was performed on May 9, 1991. The tumor regrew, and a second craniotomy was performed on March 8, 1992. On April 3, 1992, McPeak executed an insurance form designating defendant, his second wife, as the beneficiary. Plaintiffs, who are McPeak's daughters from his

---

[1] The prior appeal in this case was decided by Judges MARKMAN and MCDONALD and visiting circuit judge M. J. MATUZAK. After this matter was remanded to this Court, this Court granted plaintiffs' motion to disqualify the original panel for reasons unrelated to the present case.

[2] *McPeak v McPeak*, 457 Mich 311, 316; 577 NW2d 670 (1998).

first marriage, were the beneficiaries before the change. On April 26, 1992, McPeak died.

Plaintiffs filed suit seeking imposition of a constructive trust and an award of exemplary damages, claiming McPeak was incompetent when he signed the beneficiary change and that defendant exerted undue influence over McPeak. The jury determined that McPeak lacked sufficient mental capacity to change beneficiaries when he signed the form on April 3, that defendant exerted undue influence on McPeak to alter the beneficiary designation, and that defendant's conduct was malicious, wilful, and wanton. Plaintiffs were awarded the proceeds from the insurance contract as well as exemplary damages. Defendant appeals as of right. Plaintiffs cross appeal. We affirm.

I

Defendant argues that exemplary damages are not recoverable in an action to impose a constructive trust on insurance proceeds on the basis of undue influence and, therefore, the trial court erred in denying defendant's motion for summary disposition of the claim for exemplary damages.

Exemplary damages are a class of compensatory damages that allow for compensation for injury to feelings. *Veselenak v Smith*, 414 Mich 567, 573; 327 NW2d 261 (1982); *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401; 295 NW2d 50 (1980). In order to justify an award of exemplary damages, the act or conduct complained of must be voluntary and the act must inspire feelings of humiliation, outrage, and indignity. *Veselenak, supra* at 574. The act or conduct must also be malicious or so wilful and wanton as to

demonstrate a reckless disregard of plaintiff's rights. *Id.* at 574-575. The theory is that the reprehensibility of the defendant's conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done the plaintiff's feelings. *Kewin, supra* at 419; *B & B Investment Group v Gitler*, 229 Mich App 1; 581 NW2d 17 (1998).

Plaintiffs alleged in their first amended complaint that defendant exerted undue influence on McPeak, that defendant knew McPeak was not mentally competent, that she intended to deprive plaintiffs of their rights as beneficiaries, and that defendant acted "maliciously, willfully, and wantonly."

In *Veselenak, supra*, the Court stated:

> The resolution of the intellectual and legal questions underpinning the award of exemplary damages was stated in the context of a finite number of factual patterns. Much of the work of the Court since then has been to determine the type of conduct which would give rise to the threshold of injured feelings necessary to support an award of exemplary damages.
>
> This Court has held that the act or conduct must be voluntary. This voluntary act must inspire feelings of humiliation, outrage and indignity. The conduct must be malicious or so willful and wanton as to demonstrate a reckless disregard of plaintiff's rights.
>
> As a practical matter, the conduct we have found sufficient to justify the award of exemplary damages has occurred in the context of the intentional torts, slander, libel, deceit, seduction, and other intentional (but malicious) acts. Due to the required mental element, negligence is not sufficient to justify an award of exemplary damages. [*Id.* at 574-575 (citations omitted).]

*Veselenak* illustrates that exemplary damages are generally available in intentional tort actions, but

does not directly address whether exemplary damages are permissible in equitable actions. Indeed, our research has revealed no Michigan cases that directly address whether exemplary damages are permissible in equitable actions.[3]    However, the language in *Veselenak* implies that the Court anticipated that the type of conduct that would give rise to the threshold of injured feelings necessary to support an award of exemplary damages could occur outside the context of a legal action involving an intentional tort. Indeed, we interpret Veselenak to hold that exemplary damages are permissible in both legal and equitable actions where the plaintiff pleads malicious and wilful conduct. Because plaintiffs pleaded facts that met the threshold requirement for exemplary damages, the trial court properly denied defendant's motion for summary disposition of the issue of exemplary damages.

II

Defendant next argues that the award of exemplary damages was punitive and not supported by the evidence and, therefore, the trial court erred in denying her motion for judgment notwithstanding the verdict (JNOV), a new trial, or remittitur. We disagree.

A trial court reviews a motion for remittitur to determine whether a jury's award is supported by the evidence. *Szymanski v Brown*, 221 Mich App 423, 431; 562 NW2d 212 (1997).   A trial court's decision to

---

[3] But see *Green v Evans*, 156 Mich App 145; 401 NW2d 250 (1985), wherein this Court allowed the recovery of exemplary damages in an undue influence claim. See also *Birkenshaw v Detroit*, 110 Mich App 500; 313 NW2d 334 (1981), and *In re Swantek Estate*, 172 Mich App 509; 432 NW2d 307 (1988), in which the panels intimated that exemplary damages may be permissible in equitable actions.

deny such a motion is reviewed for an abuse of discretion. *Id.* A trial court's decision to deny a motion for a new trial is also reviewed for an abuse of discretion. *Setterington v Pontiac General Hosp*, 223 Mich App 594, 608; 568 NW2d 93 (1997). A motion for JNOV should be granted only when there was insufficient evidence presented to create an issue for the jury. The trial court, when reviewing such a motion, must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party and determine whether facts presented preclude judgment for the nonmoving party as a matter of law. If reasonable minds could differ regarding the evidence, the question is for the jury and JNOV is improper. *Pontiac School Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 612; 563 NW2d 693 (1997), lv gtd in part 457 Mich 870 (1998).

Exemplary damages are recoverable as compensation to the plaintiff and not as punishment of the defendant. *Veselenak, supra* at 573. An award of exemplary damages is proper if it compensates a plaintiff for the humiliation, sense of outrage, and indignity resulting from injustices maliciously, wilfully, and wantonly inflicted by the defendant. *Kewin, supra* at 419. It is not essential to present direct evidence of an injury to the plaintiff's feelings. Rather, the question is whether the injury to feelings and mental suffering are natural and proximate in view of the nature of the defendant's conduct. *Green v Evans*, 156 Mich App 145, 153; 401 NW2d 250 (1985).

Here, the mental suffering and injury to plaintiffs' feelings flow naturally from the nature of defendant's acts. Defendant's actions constituted a lengthy pattern

of conduct directed at isolating McPeak from plaintiffs and other family members. The instances of injured feelings and humiliation caused by defendant's actions during the last year of McPeak's life are numerous. Of paramount importance is the fact that defendant essentially banned plaintiffs from either visiting with or calling McPeak during the last year of his life. The jury heard a plethora of testimony regarding defendant's conduct and the resultant effect on plaintiffs. It is impossible to quantify the injury to feelings caused by defendant's manipulation of McPeak. Consequently, we reject defendant's argument that the amount of exemplary damages evidences an intent on the part of the jury to punish defendant. There was sufficient evidence on the record to support the jury's award of exemplary damages. The trial court did not abuse its discretion by denying defendant's motion for a new trial or, in the alternative, for remittitur. In addition, the evidence was sufficient to create an issue for the jury and, therefore, defendant's motion for JNOV was properly denied.

III

Defendant asserts that the jury's finding that defendant exerted undue influence over McPeak was inconsistent with the jury's finding that McPeak lacked mental capacity on April 3, 1992. Whether verdicts of undue influence and lack of mental capacity are inconsistent is a question of first impression in Michigan.[4]

---

[4] But see *Wilson v Parker*, 130 Mich 638; 90 NW 682 (1902), wherein the Supreme Court, without addressing the issue of inconsistent verdicts, let

A verdict is not inconsistent if there is an interpretation of the evidence that provides a logical explanation for the findings of the jury. *Granger v Fruehauf Corp*, 429 Mich 1, 7; 412 NW2d 199 (1987). In *Lagalo v Allied Corp*, 457 Mich 278, 282; 577 NW2d 462 (1998), the Court, quoting *Granger, supra* at 9, stated:

> "[I]t is fundamental that every attempt must be made to harmonize a jury's verdicts. Only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside."

With this standard in mind, we conclude that the jury's verdict finding both undue influence and mental incapacity is not inconsistent. A reasonable interpretation of the evidence leads to the conclusion that the undue influence represented a pattern of conduct aimed at isolating McPeak from plaintiffs and other family members. Such undue influence led McPeak to alter the life insurance beneficiary form on April 3, 1992. Because the undue influence occurred over an extended period, such a finding does not conflict with the finding of incapacity, which pertains only to the specific moment of execution of the change of beneficiary form. These verdicts are not so legally inconsistent that they should be set aside. *Lagalo, supra.* Hence, the trial court properly denied defendant's motion for a new trial on the ground that the verdicts were inconsistent.

IV

Defendant also claims that plaintiffs' witnesses were improperly permitted to render an opinion

---

stand a verdict denying probate of the decedent's will after the jury considered claims of both undue influence and mental incapacity.

regarding McPeak's competence on the date he signed the change of beneficiary form. We disagree. Plaintiffs presented sufficient evidence of the qualifications of Drs. Victor G. Sonnino and J. Daniel Cline. Any limitations on their qualifications pertain to the weight to be given their testimony, not to its admissibility. MRE 702; *Mulholland v DEC Int'l Corp*, 432 Mich 395, 406; 443 NW2d 340 (1989); *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 175; 530 NW2d 772 (1995). Additionally, lay opinion testimony is permitted when it is rationally based on the witness' perception and is helpful to a clear understanding of a fact at issue. MRE 701; *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447; 540 NW2d 696 (1995). Here, each of the lay witnesses knew McPeak for an extended period and observed him before and after his surgeries. The opinions were based on the witnesses' own perceptions and the testimony was helpful to a clear understanding of a fact at issue. The trial court did not abuse its discretion in permitting the testimony. *Richardson, supra.*

V

Defendant maintains that the trial court abused its discretion by refusing to allow defendant to amend the witness list to permit John Marcou, McPeak's life insurance agent, to testify and by refusing to admit Exhibit 50, a copy of a letter and accompanying change of beneficiary form allegedly requested by Marcou on behalf of McPeak in June 1991. Defendant's stated reason for seeking admission of the exhibit and testimony was "to show that the letter in fact existed, that Defendant found the letter, read the letter, and that Defendant's state of mind was affected

by having seen the letter." Assuming, arguendo, that the court erred, defendant has failed to establish that she was prejudiced by the court's decision. MRE 103(a). Defendant was allowed to present testimony that the letter existed, that she found it, and that her state of mind was affected by the letter.

VI

Defendant contends that the court erroneously instructed the jury with regard to mental capacity and undue influence. A trial court's decisions with regard to jury instructions are reviewed for an abuse of discretion. *Colbert v Primary Care Medical, PC*, 226 Mich App 99, 103; 574 NW2d 36 (1997). Jury instructions are reviewed as a whole to determine whether the instructions adequately informed the jury of the applicable law, given the evidentiary claims of the case. *Hord v Environmental Research Institute of Michigan*, 228 Mich App 638, 644; 579 NW2d 133 (1998).

With regard to the instruction concerning mental capacity, the trial court gave the following instruction:

> Michael McPeak had sufficient mental capacity to change life insurance beneficiaries if at the time he had the change he had the ability to understand that he was providing for the disposition of the proceeds of the life insurance policy after his death, and the ability to know the nature and extent of his property, and the ability to know *the natural objects of his bounty*, and the ability to know the manner in which the change of beneficiary form disposed of the life insurance policy proceeds. [Emphasis added.]

Defendant specifically objects to the emphasized portion of the above instruction. Defendant contends

that the phrase "natural objects of his bounty" applies only to will contests and that the phrase "[those] who are dependent upon [him]" is proper in the context of a dispute involving a change of a life insurance beneficiary. See, e.g., *In re Estate of Erickson*, 202 Mich App 329, 332-333; 508 NW2d 181 (1993) (the test to be applied in determining the mental competency of an insured at the time the insured attempts to effect a change of beneficiaries of a life insurance policy is whether the insured "was engaged, to know and understand . . . who are dependent upon the insured). But see *Mut Life Ins Co of New York v Hughes*, 292 Mich 644, 650; 291 NW 39 (1940) (test of competency in a life insurance context is the same as that applied to the case of a bequest). However, we conclude that an argument based on semantics need not be addressed. As a whole, the instruction given adequately informed the jury of the applicable law. Further, it is impossible for defendant to prove any prejudice flowing from this one instruction. The testimony presented at trial established that McPeak was clearly unable to understand the nature and extent of his property and did not always recognize family members. Hence, the jury could have reasonably concluded that McPeak was incapable of knowing either the natural objects of his bounty or his dependents. Accordingly, we conclude that the trial court did not abuse its discretion in instructing the jury.

With regard to the instruction concerning undue influence, defendant fails to cite any supporting authority for the proposition that plaintiffs were required to prove that undue influence was exerted on McPeak at the exact moment he changed his beneficiary form for the life insurance policy. A party may

not leave it to this Court to search for authority to support its position. *Schadewald v Brulé*, 225 Mich App 26, 34; 570 NW2d 788 (1997). Hence, this issue is waived on appeal.

VII

Defendant suggests that the trial court improperly admitted evidence of defendant's conduct during periods when McPeak's susceptibility to defendant's conduct was not at issue. We disagree. To prove undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency, and impel the grantor to act against the grantor's inclination and free will. *Erickson, supra* at 331. The timeliness of the evidence of undue influence bears on the weight of the evidence and not on its admissibility. *In re Balk's Estate*, 289 Mich 703, 706; 287 NW 351 (1939).

Here, the complained-of conduct occurred between November 1990 and immediately following McPeak's death on April 26, 1992. The testimony in question suggested a pattern of conduct by defendant aimed at isolating McPeak from his family and influencing his decisions and, therefore, was relevant. The lack of temporal proximity of some of the testimony is relevant to its weight, not to its admissibility. Further, because the evidence tended to prove facts directly in question, and because plaintiffs had no other less harmful means to prove such facts, the trial court did not abuse its discretion in admitting the testimony. *People v Oliphant*, 399 Mich 472, 490; 250 NW2d 443 (1976).

VIII

Defendant also claims that the attorney fee awarded as a mediation sanction under MCR 2.403(O) was excessive. We disagree. The hourly rate of $125 does not conflict with plaintiffs' contingent fee agreement and was reasonable given the complexity of the case. Further, MCR 2.403(O) does not require a trial court to find that reasonable attorney fees are equivalent to actual fees. *Cleary v Turning Point*, 203 Mich App 208, 212; 512 NW2d 9 (1993).

IX

On cross appeal, plaintiffs argue that the trial court abused its discretion in failing to award plaintiffs prejudgment interest. We disagree. Plaintiffs' complaint sought the imposition of a constructive trust on the proceeds of the insurance policy. Before trial, plaintiffs moved to compel defendant to deposit the insurance proceeds with the court. Having sought and received equitable relief, plaintiffs are not entitled to interest pursuant to the judgment interest statute, MCL 600.6013; MSA 27A.6013. *Giannetti v Cornillie (On Remand)*, 209 Mich App 96; 530 NW2d 121 (1995).[5]

Affirmed.

---

[5] In light of our conclusion that defendant is not entitled to a new trial, we need not address the remainder of the issues raised by plaintiffs on cross appeal.