# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN LACARIA, JR,

Plaintiff-Appellant,

v

AURORA BOREALIS MOTOR INN, INC., and
WAYSIDE MOTEL, INC.,

Defendants-Appellees.

UNPUBLISHED
November 8, 2016

No. 329327
Mackinac Circuit Court
LC No. 2014-007589-NO

Before: MARKEY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals as of right from the circuit court order granting defendants summary disposition pursuant to MCR 2.116(C)(8) and (10) of his claim under the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq*. We reverse and remand for further proceedings.

Plaintiff asserts that he is blind in one eye and has diminished vision in the other, although he is still able to drive, read, and write. He testified that he had no restrictions on his driver's license, although he did have a handicapped license plate. Plaintiff's testimony was vague as to exactly what his visual impairment actually prevented him from doing. Nonetheless, plaintiff trained a dog to assist him in connection with his diminished eyesight, although he was equally vague as to exactly what the nature of his dog's assistance was, beyond a possible emotional support role. He admitted that he had no documentation establishing his need for a service dog and that his dog had undergone no formal training. However, according to plaintiff, the Detroit Medical Center had granted his dog something called a "G-14 clearance," the nature of which was also never explained. Plaintiff contended that the Detroit Medical Center had also given him a "badge that the TSA[1] requires for traveling on planes," and that he had in fact traveled on airplanes with his dog.

In August of 2013, plaintiff drove from Detroit to St. Ignace, where he stopped to seek lodging at defendant Aurora Borealis Motor Inn (Aurora). According to defendant Aurora, it has

---

[1] Transportation Safety Administration.

-1-

a clearly posted "no pets" policy. Plaintiff denied seeing any such signage, but the gravamen of his case is that his dog is not a "pet" or even legally an "animal" by virtue of being a service dog. According to plaintiff, the hotel receptionist became confrontational when he mentioned that he had a service dog, and the receptionist took the hotel registration card from plaintiff and told him that he could not stay at the hotel. Plaintiff alleged that he explained his need for a service dog, but the receptionist questioned his disability in front of other customers, causing plaintiff to feel humiliated. Plaintiff left and drove to defendant Wayside Motel (Wayside), where a receptionist greeted him. Upon mentioning his service dog, the receptionist mentioned that he had received a phone call from the owner of the Aurora Borealis Motor Inn notifying him about a man with a service dog. Wayside also refused to let plaintiff rent a room. Plaintiff found lodging at another hotel in St. Ignace.

Plaintiff filed the instant suit alleging that defendants violated the PWDCRA and 42 USC 12182(a), a provision of the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. He alleged that he suffered emotional damages as a consequence of the way in which defendants treated him, apparently because of how "rude and discourteous" defendants' employees acted toward him and the fact that he was "treated inhumanely" by being refused a room. At his deposition, he conceded that he had not suffered any physical harm. The trial court dismissed plaintiff's claim under the ADA on the ground that the ADA allowed only for equitable relief that plaintiff did not seek. The trial court subsequently dismissed plaintiff's claim under the PWDCRA on the grounds that plaintiff failed to show that he was "disabled" within the meaning of that act, that his damages were not compensable under that act, and that he had not demonstrated that his dog was a certified service animal under relevant statutory authority.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Plaintiff contends that the trial court erred in finding that he was not disabled, that his dog was not a proper service animal, and that damages for emotional distress were unavailable. Insofar as we can determine from plaintiff's extremely minimal brief submitted to this Court, he does not appeal the trial court's dismissal of his ADA claim.

As an initial matter, there appears to be no dispute that plaintiff has impaired vision, including detached retinas and a damaged cornea. Notwithstanding defendants' observation that there is no evidence in the record to the effect that plaintiff's impaired vision actually prevents him from doing anything, the PWDCRA defines disability as follows:

> (*i*) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:
>
> * * *
>
> (B) For purposes of article 3, is unrelated to the individual's ability to utilize and benefit from a place of public accommodation or public service. [MCL 37.1103(d)(*i*)(B).]

-2-

Significantly, therefore, defendants' observations regarding the extent to which plaintiff's impaired vision affects his ability to do anything are irrelevant. A detached retina and a scarred cornea are, clearly, "determinable physical . . . characteristic[s]" as contemplated by MCL 37.1103(d)(*i*). Furthermore, "unrelated to the individual's ability to utilize and benefit from a place of public accommodation or public service" is explicitly "with *or* without accommodation." MCL 37.1103(l) (emphasis added). Defendants' citation to *Miller v Detroit*, 185 Mich App 789; 462 NW2d 856 (1990), is inapt because that case relied on a predecessor statute that did not specify "with or without accommodation." The addition of that language by the Legislature "lowers the threshold of proof of a handicap by providing that an individual is handicapped even if some accommodation is necessary . . . " *Rourk v Oakwood Hosp Corp*, 458 Mich 25, 31; 580 NW2d 397 (1998).

With or without accommodation—that is, with or without a service dog—plaintiff could presumably still utilize defendants' hotels despite his impaired vision as evidenced by his ability read, write, and drive. As plaintiff points out, defendants' no-pets policy does not permit them to deny the use of their facilities because of a service animal. MCL 750.502c.[2] Consequently, there was a genuine issue of material fact as to whether plaintiff had a disability as contemplated by the PWDCRA. The trial court erred by granting summary disposition on that basis.

Next, plaintiff asserts that the trial court erred when it determined that plaintiff "has not shown that the 'service dog' qualifies as being a certified service dog under the statutory authority." We agree in relevant part.

As an initial matter, this is not a criminal proceeding, so whether defendants violated MCL 750.502c is of little relevance. However, defendants unambiguously did not. At the time of the alleged discrimination, that statute expressly required service dogs to be wearing specified identifying attire *and* the person with disabilities to carry documented proof that the dog had been "trained by a qualified organization or trainer."[3] Pursuant to plaintiff's admission that his dog did not, in fact, receive any formal training, his dog could not possibly have qualified under the statute at the time. Nevertheless, because this is a *civil* proceeding under the PWDCRA, the fact that defendants did not violate a *criminal* law is not dispositive.[4]

The PWDCRA does not define what constitutes a service dog or, indeed, even refer to "service dogs." Instead, the PWDCRA states in relevant part that:

Except where permitted by law, a person shall not:

---

[2] We note, however, that MCL 750.502c is a penal statute and this is not a penal matter; furthermore, as we discuss *infra*, plaintiff's dog would not have qualified as a "service dog" under the version of the statute in effect at the time of the alleged discrimination in this matter.

[3] MCL 750.502c was significantly overhauled by 2015 PA 144, and it now defines a service animal by reference to 28 CFR 36.104. MCL 750.502c(11)(f)(*i*).

[4] Plaintiff's assertions that defendants "broke the law," however, are therefore overstated.

(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations *or because of the use by an individual of adaptive devices or aids*. [MCL 37.1302(a) (emphasis added).]

The PWDCRA also does not define "adaptive devices or aids." However, it is at least conceivable that a service dog could constitute an "adaptive aid" that would facilitate plaintiff's ability to navigate a public place or perform other helpful tasks. Defendants point out that, as noted, not only was plaintiff's dog not given any formal training, plaintiff bought the dog's harness from the internet. Plaintiff, in response, points to the definition of a service animal found in the federal code of regulations pertaining to the ADA.

We note that a "service animal" is presently defined for purposes of MCL 37.301 *et seq.*, which provides for "the voluntary issuance of identification and patches for service animals," by direct reference to 28 CFR 36.104. Likewise, as noted, MCL 750.502c also presently makes such a definition by reference, as does MCL 287.291, which exempts certain service animals from licensing fees. However, none of these statutes are part of the PWDCRA. Furthermore, MCL 37.301 did not exist at the time of the alleged discrimination in this matter, MCL 750.502c did not contain the reference at that time, and MCL 287.291 contained no definition of "service dog" or "service animal" at the time. Nevertheless, the ADA and the PWDCRA "share the same purpose and use similar definitions and analysis," so although not strictly bound to do so, Michigan courts frequently "look to the ADA and federal cases interpreting the ADA for guidance" in analyzing PWDCRA cases. *Chiles v Machine Shop Inc*, 238 Mich App 462, 472-473; 606 NW2d 398 (1999).

We have not found any Michigan case law adopting the federal definition of a service animal for the purposes of the PWDCRA. However, presuming we were to do so, the Code of Federal Regulations defines a service animal:

Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability . . . The work or tasks performed by a service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks . . . The crime deterrent effects of an animal's presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition. [28 CFR 36.104.]

As noted, plaintiff has not explained what his dog actually does to help him. His deposition testimony strongly implies that his dog provides only emotional support, which would appear to be excluded from "work or tasks" under 28 CFR 36.104.

However, plaintiff did assert that his dog had some manner of specialized training specifically relevant to assisting him with his impaired vision, which, if explained with

specificity, would be sufficient to establish a genuine question of fact as to whether his dog was a "service animal" under federal regulations. Furthermore, we would not hold that an "adaptive device or aid" necessarily excludes emotional support without some indication from our Legislature that it intended an ostensibly broad and undefined term to be restricted in scope. Moreover, an "adaptive device or aid" does not appear to require formal credentials under the statute, although such credentials (or the lack thereof) could certainly be persuasive. Consequently, while we appreciate that plaintiff's proofs are highly tenuous, we find a question of fact as to whether the dog was a service dog that could function as an adaptive aid or device for the purposes of the PWDCRA.[5] Thus, the trial court erred by granting summary disposition on that basis.

Finally, plaintiff contends that the trial court erred in finding that plaintiff had not shown compensable damages under the PWDCRA. We agree insofar as the trial court found that emotional damages are not compensable.

The PWDCRA permits actions for injunctive relief and for damages, the latter defined as "damages for injury or loss caused by each violation of this act, including reasonable attorneys' fees." MCL 37.1606. Exemplary damages are a specific kind of compensatory damages awarded for an injury to feelings because of exceptionally reprehensible, voluntary acts that "inspire feelings of humiliation, outrage, and indignity." *McPeak v McPeak*, 233 Mich App 483, 487-488; 593 NW2d 180 (1999). Defendants correctly asserted that exemplary damages are not provided for under the PWDCRA, and therefore are not permitted here. See *Bachman v Swan Harbour Ass'n*, 252 Mich App 400, 426; 653 NW2d 415 (2002). However, damages due to emotional distress are not necessarily exemplary. *Dep't of Civil Rights ex rel Johnson v Silver Dollar Cafe*, 198 Mich App 547, 549; 499 NW2d 409 (1993).[6] Furthermore, because this is not a negligence action, damages for emotional distress do not necessarily require definite and objective physical injury. See *Daley v LaCroix*, 384 Mich 4, 12-13; 179 NW2d 390 (1970).

Insofar as we can determine from the record, the trial court agreed with defendants that plaintiff's claims of damages were not compensable *per se*, on the theory that a claim for damages stemming from emotional distress is necessarily a request for exemplary damages. In so doing, the trial court erred. Whether plaintiff's claimed emotional damages *in this matter* are compensable is a closer question. It is possible to infer from plaintiff's pleadings and deposition

---

[5] To emphasize, we do not hold that 28 CFR 36.104 does define "service animal" for the purposes of the PWDCRA, nor do we hold that it does not. We merely presume, *without* deciding, that it holds some relevance to our discussion of this matter today.

[6] The Court in *Dep't of Civil Rights* was discussing the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2010 *et seq*. However, the ELCRA and the PWDCRA contain identical statutory language allowing for injunctive relief, damages, or both with damages being defined as injury or loss caused by each violation of the respective act. Compare MCL 37.2801 (defining damages under the ELCRA) with MCL 37.1606 (defining damages under the PWDCRA). Thus, if emotional distress damages stemming from discrimination are available under the ELCRA, we would expect them also to be available under the analogous provision of the PWDCRA.

testimony that he was primarily offended and humiliated by what he deemed impolite and insufficiently respectful treatment. However, he also alleged that he was unable to function and could not eat or sleep for a time after the alleged discrimination, and his medical provider, although not a psychiatrist increased his medication afterwards to further combat his depression and anxiety. On the record before us, viewed in the light most favorable to the non-moving party, we find enough of a question of fact that we are unable to conclude that we should affirm on the basis of a right result for a wrong reason. We therefore find summary disposition at this point to be improper.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Amy Ronayne Krause