*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIAN YAFFA,

          Plaintiff-Appellant,

v

RANDOLPH WILLIAMS and GWENDOLYN
WILLIAMS,

          Defendants-Appellees.

UNPUBLISHED
March 2, 2023

No. 360732
Oakland Circuit Court
LC No. 2021-191442-CH

Before: RICK, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Plaintiff, Brian Yaffa, appeals as of right the trial court order confirming an arbitration award favoring defendants, Randolph and Gwendolyn Williams. Because the trial court did not err by confirming the arbitration award, we affirm.

## I. BASIC FACTS

The Williamses purchased a home from Yaffa in 2020. In the seller's disclosure statement, Yaffa represented that the septic tank and the drain field were in working order. A later inspection report noted that the home had a public sewer system, but it also indicated that the bathroom drainage system was not adequately functioning. The inspector suggested that further investigation was needed. No further inspection occurred. Instead, the parties agreed to an addendum to the purchase agreement, which required Yaffa to provide an additional $2,000 toward the closing costs. After the Williamses took possession of the home, they discovered that the septic system was not operational.

The Williamses initially filed a complaint in the circuit court; however, because the purchase agreement included an arbitration clause, the court dismissed the complaint. The matter was submitted to arbitration.

At the arbitration hearing, the arbitrator heard testimony from several witnesses and considered documentary evidence. Randolph Williams testified that after he and his wife took possession of the property, they could not use the plumbing system. He described having to

remove "human waste" from the toilet area by hand and having to clean up the area around the toilet multiple times each day. He also stated that he could not shower because the dirt in the septic tank prevented the water from draining. Additionally, a neighboring property owner testified that, in the fall of 2019, she observed Yaffa using a bulldozer to spread dirt in the backyard, which was flooded. While Yaffa was driving the bulldozer, it fell into the septic tank behind the house. Thereafter, the neighbor would often smell a "bad odor." In response, Yaffa testified that he merely thought that he got the bulldozer "stuck in a water hole."

Following the hearing, the arbitrator determined that Yaffa had fraudulently misrepresented that the septic system was in working order when he sold the home. Accordingly, the arbitrator awarded the Williamses exemplary damages and costs.[1]

Yaffa filed a complaint in the circuit court to vacate the arbitration award. In response, the Williamses filed a motion to enforce the arbitration award. At a hearing on the motion, Yaffa argued that he had disclosed problems with the drainage, grading, and flooding in the seller's disclosure statement and that he had believed that there were no problems with the septic field when he made the seller's disclosure statement. He also asserted that he had provided the Williams with an additional $2,000 to address the drainage problems noted in the inspection and that the arbitration award was improper because the Williamses had failed to mitigate their damages. The circuit court determined that there was no error or violation of any law in the arbitrator's decision. As a result, the court entered an order confirming the award and denying Yaffa's request to vacate the award.

## II. ARBITRATION AWARD

### A. STANDARD OF REVIEW

Yaffa argues that the arbitrator erred by confirming the arbitration award. Although this Court reviews de novo a trial court's decision to enforce an arbitration award, our review is "extremely limited." *Fette v Peters Const Co*, 310 Mich App 535, 541; 871 NW2d 877 (2015). "A reviewing court may not review the arbitrator's findings of fact, and any error of law must be discernible on the face of the award itself." *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009) (citations omitted). Thus, "only a legal error that is evident without scrutiny of intermediate mental indicia will suffice to overturn an arbitration award." *Id*. (quotation marks and citation omitted). This Court will not review "the arbitrator's mental path leading to the award." *Id*. (quotation marks, citation, and alteration omitted). "[A]ny error of law must be so substantial that, but for the error, the award would have been substantially different." *Id*. (quotation marks and citation omitted). Because "courts may not substitute their judgment for that of the arbitrators," any claims of legal error "must be carefully evaluated in order to assure that [they are] not used as a ruse to induce the court to review the merits of the arbitrator's decision." *Id*. at 675 (quotation marks and citation omitted).

---

[1] The arbitrator did not award actual damages or attorney fees for either party.

-2-

## B. ANALYSIS

Yaffa argues that the trial court erred by affirming the arbitrator's award because the Williamses failed to demonstrate that he made a fraudulent misrepresentation. The elements of fraudulent misrepresentation are:

(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth or falsity, and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act on it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered damage. [*Derderian v Genesys Health Care Sys*, 263 Mich App 364, 378; 689 NW2d 145 (2004) (quotation marks and citation omitted).]

Yaffa first argues that there was no evidence that the Williamses reasonably relied on his representation in the seller's disclosure statement that the septic system was in working order. A party's reliance on a fraudulent misrepresentation must be reasonable. *Bergen v Baker*, 264 Mich App 376, 389; 691 NW2d 770 (2004). Yaffa asserts that the Williamses could not have reasonably relied upon his statement in the seller's disclosure statement because a home inspection showed them that further investigation of the drainage system was needed. He also points out that, because of the inspector's report, he agreed to pay the Williamses an extra $2,000 toward closing costs. However, the inspector's report did not address the septic system, so it did not, in fact, contradict Yaffa's representation that the septic system did not have any problems.

Moreover, the arbitrator found that, based on the evidence presented, the Williamses reasonably relied upon Yaffa's representation. The arbitrator reasoned:

Claimant Randolph Williams made two statements relating to reliance. He testified he relied "100%" on the professionals. He also testified he would not have purchased the home if he knew there was a problem with the septic tank and field. The problem with the reliance on the professionals is that they were not told about the septic problem. And [Yaffa's] defense that [the Williamses] proper claims should be directed at Claimant's agent and the inspector, does not relieve [Yaffa] of the responsibility to honestly complete the Seller Disclosure Statement. The Arbitrator finds that [the Williamses] relied on both the truth of the Disclosure Statement and his professionals. Perhaps [the Williamses] could pursue a claim against their agent and the inspector, but those claims are not before the Arbitrator. There can be more than one reason for a defrauded person's action.

* * *

A reasonable person could conclude here, and the Arbitrator so finds, that [Yaffa's] misrepresentation exerted a material influence on [the Williamses'] decision to buy the home even if it was not the only reason.

In doing so, the arbitrator did not credit the evidence suggesting that the Williamses reliance on Yaffa's representation was not reasonable. Instead, based on his view of the evidence, the arbitrator found that the reliance was reasonable.

This Court may not review that factual finding. See *Fette*, 310 Mich App at 541 ("A court may not review an arbitrator's factual findings or decision on the merits."). When an arbitrator "did not disregard the terms of his or her employment and the scope of his or her authority as expressly circumscribed in the contract," then "judicial review effectively ceases." *Ann Arbor v American Federation of State, Co, and Municipal Employees (AFSCME) Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009) (quotation marks and citation omitted). Moreover, a claim of legal error "must be carefully evaluated in order to assure that this claim is not used as a ruse to induce the court to review the merits of the arbitrator's decision," and to observe the principle that "courts may not substitute their judgment for that of the arbitrators." *Washington*, 283 Mich App at 675 (quotation marks and citation omitted). Yaffa's argument is not that the arbitrator failed to apply the proper legal framework, but rather that he applied the law to erroneous factual findings. "It is simply outside the province of the courts to engage in a fact-intensive review" of the arbitrator's award and "whether the evidence that he relied on was the most reliable or credible evidence presented." *Id.* Thus, we do not review Yaffa's argument because neither the trial court nor this Court is "required or authorized to review the arbitrator's findings of fact." *Id.*

Next, Yaffa argues that the arbitrator also erred by finding that Yaffa's representation was fraudulent. The arbitrator made findings to support its determination that Yaffa had made a fraudulent disclosure by (1) stating that the septic system was functional and (2) by representing that a second question about the "condition, if known, of the Septic tanks/drain fields" was not applicable. The arbitrator determined that Yaffa knew that the septic system was inoperable at the time of the seller's disclosure statement. He reasoned:

> based on the testimony of [the neighboring property owner], that [Yaffa] had personal knowledge there was a septic tank and septic field behind the house and knew that the bulldozer he drove fell into the septic field and tank behind the house causing damage to the septic tank and field. He did not exercise ordinary care in transmitting information to [the Williamses] regarding the septic tank and field. Because he had such personal knowledge, he cannot rely on the safe harbor provision of Section (5)(3), even if the home inspector was an expert as defined in Section 3.

> The Arbitrator finds that [the neighboring property owner's] testimony is also reasonable considering [Yaffa's] experience in buying and selling homes. [Yaffa] made no effort to counter [the neighbor's] testimony other than . . . testifying he did not know that the bulldozer he operated fell into a septic tank. The Arbitrator chooses to believe [the neighbor]. Had [Yaffa] disclosed what happened in the back yard to [the Williamses], they would have been able to discover the nature of the harm caused by the bulldozer falling into the septic tank and field. The Arbitrator emphasizes that [Yaffa] has not contested that there was damage to the septic tank and field at the time of the sale of the house.

On appeal, Yaffa points out that although he stated in one part of the seller's disclosure statement that the septic system was functioning properly, in another part of the statement he disclosed that the property had problems with "[s]ettling, flooding, drainage, structural, or grading problems." Again, however, he seeks a determination by this Court that the arbitrator erred by

-4-

applying the correct legal framework to erroneous factual findings. Such a review of the arbitrator's award by the trial court or by this Court is not required or authorized. See *id*.

Yaffa also argues that the arbitrator erred by awarding exemplary damages and by failing to consider whether defendants failed to mitigate the damages. The arbitrator awarded $29,550 plus interest to the Williamses in exemplary damages. Exemplary damages compensate a claimant, but exemplary damages "pick up where actual damages leave off," increasing actual compensation. *Cetera v Mileto*, ___ Mich App ___, ___; ___ NW2d ___ (2002) (Docket No. 356868) (quotation marks and citation omitted); slip op at 7-8. Exemplary damages are awarded to compensate the injured party, not punish the liable party. *McPeak v McPeak (On Remand)*, 233 Mich App 483, 490; 593 NW2d 180 (1999). Exemplary damages are proper if they compensate the injured party for "humiliation, sense of outrage, and indignity" that was "maliciously, wilfully and wantonly" caused by the other party. *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 630; 769 NW2d 911 (2009). Direct evidence of injury to a victim's feelings is not required. *Id*. at 631-632. "Rather, the question is whether the injury to feelings and mental suffering are natural and proximate in view of the nature of the defendant's conduct." *Id*. (quotation marks and citation omitted).

In this case, the arbitrator reasoned:

> The Arbitrator finds that the misrepresentation here was willful and wanton and demonstrates a reckless disregard for [the Williamses'] rights. One can easily understand and appreciate the horrible and disgusting process that [the Williamses] endured each day and the humiliation, outrage, and indignity that [the Williamses] suffered. Randolph Williams testified to such conditions. He testified he cleaned the bathrooms daily, at least, and removed human waste from the house. Given the deplorable conditions that [the Williamses] lived in since taking possession of the home, as described by Mr. Williams, the Arbitrator finds that exemplary damages are awardable to [the Williamses] for the humiliation, outrage, and indignity suffered by [the Williamses] since they took possession of the home in March 2020. [The Williamses] certainly did not receive what they expected to receive—a home with a working sewage removal system—whether it was a septic system or city sewer system. Given the condition of the septic system and effort required by Mr. Williams, a charge of $50 per day to clean the toilet areas and remove waste from the home is reasonable. Accordingly, the Arbitrator awards [the Williamses] $50 per day from possession (we don't have the exact date, but the Arbitrator will use March 31, 2020, as the possession date for damage purposes) until November 12, 2021, totaling 591 days multiplied by $50 per day for a total exemplary damage award of $29,550, together with interest at the statutory rate, MCL 600.6455(2), from the filing of the arbitration demand until the award is satisfied.

Yaffa argues that the court's findings were erroneous because "[a]ny alleged feelings of humiliation, sense of outrage, and indignity were not the result of injustices maliciously, willfully, and wantonly inflicted by [him], but rather those alleged feelings are a result of [the Williamses'] failure to act." Yaffa additionally asserts that the Williamses' manually removing waste from their toilet for 591 days was not the natural and proximate result of any misrepresentation by him involving their septic system, but was caused by their failure to ascertain and remedy the plumbing

-5-

problem. Again, this is not an argument about an error of law apparent on the face of the arbitrator's award, but rather a challenge to the arbitrator's thought process in applying the proper legal framework to the facts. Accordingly, this Court must defer to the opinion of the arbitrator. See *Fett*, 310 Mich App at 541.

Yaffa next asserts that the Williamses failed to mitigate their damages because they did not address the septic tank problem immediately upon discovering that the toilet did not function. The arbitrator did not directly address this issue. An injured party has an "obligation to use reasonable means under the circumstances to avoid or minimize his or her damages." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 538; 854 NW2d 152 (2014). A litigant may not recover damages that could have been avoided. *Id*. The liable party "bears the burden of proving that the plaintiff failed to make reasonable efforts to mitigate damages," and "[t]he question whether the plaintiff's efforts to mitigate damages were reasonable under the circumstances is one for the trier of fact." *Id*. at 539.

Yaffa suggests that the Williamses could have tapped into any home equity they accrued in 591 days to pay for a septic system. However, it was not established in the evidence that the Williamses could have immediately remedied the septic problem. Nor does the record support a finding that the damages would have been minimized if the Williamses had installed a new septic system instead of manually removing human waste from the toilet. For these reasons, Yaffa has not met his burden of showing that the Williamses failed to make reasonable efforts to mitigate their damages.[2]

Affirmed.

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan

---

[2] Yaffa contends that the trial court may have denied his motion to vacate the arbitration award because it may have erroneously found that his motion was untimely. However, although the court did not directly reject the Williamses' argument that the motion was untimely, the court nevertheless decided the motion on the merits. Yaffa's supposition that the court may have also denied his motion on procedural grounds is, therefore, not grounds for reversal.